Daniel GAUDIANE, Appellant,

v.

James LUNDGREN, Appellee.

No. S–879.

Supreme Court of Alaska.

Aug. 29, 1986.

Edward A. Merdes, Fairbanks, for appellant.

Peter J. Aschenbrenner, Richard Savell, Aschenbrenner & Brooks, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

Daniel Gaudiane (Gaudiane) claims that James Lundgren (Lundgren) breached two separate agreements in which the parties were to acquire and share profits from certain real property. A jury returned a verdict in favor of Lundgren on the first agreement and the superior court directed a verdict in favor of Lundgren on the second. We reverse the jury's verdict and affirm the directed verdict.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1976 Gaudiane and his wife purchased approximately 3.17 acres of property in Fairbanks, Alaska from Fern Palfy (Palfy Property). Gaudiane paid Ms. Palfy $886,-000 for the property, with $12,000 payable in cash and the balance by a promissory note, secured by a deed of trust on the property. Ms. Palfy later was declared incompetent and her daughter and son became conservators of her estate. Gaudiane experienced financial difficulties and could not make his payments. He filed for bankruptcy in June 1981. The Trustee in Bankruptcy, Jeanette James, became vested with title to the Palfy Property.

In September 1981 Gaudiane met with Lundgren, with whom he had had prior partnership transactions, and suggested that Lundgren could make some money by purchasing the Palfy Property. He told Lundgren that the property was appraised at $1,300,000 with a balance of about $800,-000 due on the note. Gaudiane brought

Ms. Palfy and Lundgren together. They executed an agreement in which Lundgren leased the property with the right to purchase it. The agreement was invalid because Ms. Palfy's conservator, her son Roy Clark, had not approved it.

In January 1982 Gaudiane asked his attorney, Gene Belland, to draw up "a short commission-option agreement" for him and Lundgren concerning the Palfy Property. The final Memorandum of Agreement (Agreement) contained three paragraphs. Under paragraph one, Gaudiane was to receive $50,000 for services rendered in negotiating the sale of the Palfy Property to Lundgren. Under paragraph two, Gaudiane was granted an option to acquire a 25% interest in the property within six months after the "close of said purchase by Lundgren" but only if he reimbursed Lundgren for 25% of the costs of acquiring the property. The third paragraph stated that the Agreement was contingent upon Lundgren and Clark signing a 42 month option on the property for $800,000. Lundgren and Gaudiane signed the Agreement but never dated it. The parties stipulated that they entered into the Agreement before April 2, 1982.

In April 1982 Clark and Lundgren signed a valid "Ground Lease and Purchase Agreement" (GLPA) in which Lundgren received a 42 month lease with an option to purchase the property for $800,000.[1] Lundgren did not have to pay rent for the 42 months but had to pay all property taxes levied on the property.

Lundgren thereafter made efforts to clear title. He paid Gaudiane's back taxes on the real property and other expenses. Some months later his attorney filed a petition to abandon burdensome property, requesting the bankruptcy court to convey the Palfy Property from the bankruptcy

trustee to the Gaudianes. This was granted. Lundgren wanted the property removed from the bankruptcy estate so that the conservators could hold a nonjudicial deed of trust foreclosure. The foreclosure sale occurred in April 1983.

In May 1983 Gaudiane heard rumors that Lundgren was going to sell his interest in the GLPA. Gaudiane asked Belland to draft a letter to Lundgren, stating that under the Agreement Gaudiane was requesting $50,000 and was exercising his option to acquire a 25% interest in the Palfy Property. Lundgren's attorney wrote back, stating that Gaudiane's request for money and the exercise of the option was untimely since Lundgren had not purchased the Palfy Property. Additionally, the letter informed Gaudiane that if he believed he had the right to exercise the option, then he must, pursuant to the agreement, reimburse Lundgren for 25% of the title-clearing expenses. Gaudiane thereafter withdrew his purported exercise of purchase rights and requested an accounting of Lundgren's expenses.

In July 1983 Lundgren and Richard Clymer, Lundgren's accountant who had received a partnership interest in the Palfy Property, assigned their interest in the GLPA to Dick Fischer for $505,000.00.

One month later, Gaudiane again sent a letter to Lundgren notifying him that he was entitled to $50,000 and was exercising his option to acquire his 25% interest in the Palfy Property. He also requested an accounting of Lundgren's expenses in developing and maintaining the property.

Lundgren's attorney wrote back stating that 1) AS 08.88.161[2] only permits licensed real estate brokers to engage in the sale and purchase of property;[3] 2) there had been no "close of purchase" as contemplated by the Agreement and therefore the

---

1. In the GLPA, the purchase price for the property was $795,000 since Lundgren received credit for the $5,000 he initially paid Ms. Palfy.

2. AS 08.88.161 provides in part:
   Unless licensed as a real estate broker, associate real estate broker, or real estate salesman, a natural person, foreign or domestic corporation, or partnership, or limited partnership, or other entity may not
   (1) sell, exchange, rent, lease, auction, or purchase real estate.

3. Gaudiane took and failed the real estate licensing exam seven times.

conditions triggering Gaudiane's option never occurred; and 3) the letter indicated that Gaudiane never made any effort to pay the "burdens of partnership" such as the various taxes and liens.

Gaudiane filed suit against Lundgren for breach of contract. He claimed that Lundgren refused to pay him for the services he rendered. As an affirmative defense, Lundgren claimed that Gaudiane's claims were barred by AS 08.88.161 since he was seeking a commission and was not a licensed real estate broker. Lundgren moved for summary judgment relying in part on AS 08.88.161. *See supra* note 2. The court denied the motion.

Lundgren then confessed liability for the $50,000 under paragraph one of the Agreement but reserved his right to assert the legal defense of AS 08.88.161 at trial.

After a long trial, a jury returned a verdict in favor of Lundgren on both paragraphs one and two of the Agreement. The court denied Gaudiane's motion for a new trial and for judgment notwithstanding the verdict. This gives rise to Gaudiane's first two issues on appeal: his right to $50,000 under paragraph one and the validity of his exercise of his option under paragraph two.

The third issue on appeal concerns an alleged oral partnership agreement between Lundgren and Gaudiane regarding the Ambassador Apartments. Gaudiane claims that he has a 50% ownership interest in the apartments but has never received any of the profits from Lundgren.

After all of the evidence was presented, Lundgren's attorney moved for a directed verdict on the Ambassador Apartments claim. The court granted the motion on the following grounds: 1) the oral agreement giving rise to the claimed ownership interest was unenforceable under the statute of frauds; 2) there was no contract between the parties because there was no consideration or mutual assent.

## II. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY ON AS 08.88.161?

The pertinent jury instruction provides:

AS 8.88.401(b) provides that a person who is not a real estate broker licensed in this state may not accept a fee or a commission for a performance of an act for which a license is required by this chapter.

AS 8.88.161 provides that unless licensed as a real estate broker, associate real estate broker, or real estate salesman, a natural person, foreign or domestic corporation, or partnership, or limited partnership, or other entity may not sell, exchange, rent, lease, auction or purchase real estate; or assist in or direct the procuring of prospective buyers or the negotiation of a transaction which results or is calculated to result in the sale, exchange, rent, lease, auction, or purchase of real estate.

The above provisions do not apply to a person who is not licensed under this chapter who makes a real estate transaction with respect to real estate the person owns.

If you find that Paragraph 1 of the Memorandum of Agreement fits under the provision of AS 8.88.401(b) and/or AS 8.88.161 your verdict must be in favor of the defendant. If you find that the provisions of AS 8.88.421 [*see infra* note 4] are applicable to the Memorndum [sic] of Agreement your verdict must be in favor of the plaintiff as to Paragraph 1 of the Memorandum of Agreement.

Gaudiane objected to the jury instruction on the ground that Lundgren waived the AS 08.88.161 defense by conceding liability. Additionally, he argued that the court's prior denial of summary judgment precluded the defense.

On appeal Gaudiane claims that: 1) he falls within the ownership exception to the licensure laws because the bankruptcy court granted the petition to abandon burdensome property which restored title to Gaudiane "nunc pro tunc"[4]; and 2) the

---

**4.** AS 08.88.421(1) exempts from the licensure

requirements of AS 08.88.161 "a person who is

issue of whether he was acting as a real estate broker or owner is a question of law for the court, not one of fact for the jury.

Lundgren contends that Gaudiane wanted $50,000 as a commission for services rendered as a real estate broker and not as an owner selling property on his own behalf. He relies on his own and his attorney Aschenbrenner's testimony that Gaudiane left the Agreement undated because he was waiting to pass the real estate license exam. Lundgren claims that Gaudiane had referred to the $50,000 as a commission. Belland, Gaudiane's attorney, also testified that Gaudiane originally requested him to draft "a short commission-option agreement." With respect to Gaudiane's claim of ownership, Lundgren argues that Gaudiane did not adequately present his argument to the trial court.

Civil Rule 51(a) provides in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The purpose of this rule is to give the trial judge the opportunity to correct any errors in the instructions. However, if the alleged error is "plain error" that is likely to result in a miscarriage of justice, we will consider it even though it was not raised below. *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 90 (Alaska 1974) (footnote and citations omitted).

In objecting to the jury instruction, Gaudiane's counsel did not specifically argue that Gaudiane owned the property as a matter of bankruptcy law. However, we find the error sufficiently plain and the likelihood of a miscarriage of justice sufficiently high to consider the issue at this time.

not licensed ... who makes a real estate transaction with respect to real estate the person owns or on the person's own behalf,...."

**5.** This rule applies in this case even though Lundgren's attorney, not the trustee, petitioned for abandonment. Neither the trustee nor Gau-

In *Mason v. Commissioner of Internal Revenue*, 646 F.2d 1309 (9th Cir.1980), the court held that "[w]hen the court grants a trustee's petition to abandon property in a bankrupt's estate, any title that was vested in the trustee is extinguished, and the title reverts to the bankrupt, nunc pro tunc." *Mason*, 646 F.2d at 1310, *citing Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937); *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n. 1 (9th Cir.1964). The bankrupt " 'is treated as having owned [the property] continuously.' " *Mason*, 646 F.2d at 1310, *quoting Wallace*, 338 F.2d at 394 n. 1. We find *Mason* dispositive.

■ Under *Mason*, Gaudiane is treated as having owned the property continuously since he regained title after the trustee abandoned the property.[5] The Ninth Circuit has indicated that the abandonment rule should not be blindly followed to an unjust result. *Wallace*, 338 F.2d at 394 n. 1. Application of this rule here will not lead to an unjust result. Lundgren's attorney filed the petition so that the Palfys could foreclose and Lundgren could eventually obtain clear title. Since Lundgren instituted the abandonment proceedings, he should accept the legal consequences of such action.

We conclude that Gaudiane owned the property at the time he negotiated the Agreement. Under paragraph one of the Agreement, Gaudiane is entitled to the $50,000.[6]

III. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT THE "CLOSE OF PURCHASE" UNDER THE MEMORANDUM OF AGREEMENT OCCURRED ON APRIL 2, 1982?

The trial court instructed the jury, in part, as follows:

diane objected to the abandonment. The court revested title in the Gaudianes.

**6.** Due to our resolution of this issue on these grounds, we do not need to address Gaudiane's other arguments concerning his right to the $50,000 under paragraph one.

The "sale to Lundgren by the Estate of Fern Palfy" referred to in Paragraph 1 of the Memorandum of Agreement occurred when Lundgren acquired the Ground Lease and Purchase Agreement.

Ninety days after the "close of purchase" (the time for Lundgren to pay Guadiane [sic] $15,000 plus monthly payments of $1,024.65 per month) was July 2, 1982.

Six months after the "close of purchase" was October 2, 1982.

Guadiane [sic] had until October 2, 1982 to exercise his option to acquire a 25% interest in the Palfy property, on the terms set forth in Paragraph 2 of the Memorandum of Agreement.

. . . .

Guadiane [sic] contends that his failure to exercise was excused; Lundgren denies that it was excused. Guadiane [sic] has the burden of proof to show that his failure to exercise the option was excused under the instructions of the court on waiver on modification which you will receive.

■ Throughout this case, Gaudiane has argued that the close of purchase occurred on July 20, 1983 when Lundgren assigned his interest in the GLPA to Fischer. Therefore, Gaudiane claims he timely exercised his option to acquire a 25% interest in the property in August 1983. On appeal Gaudiane contends that the court erred in charging the jury as a matter of law that the close of purchase occurred on April 2, 1982. We agree.

The relevant provision of the Agreement provides:

As a further consideration for such services rendered by Gaudiane, Lundgren hereby grants Gaudiane the first right and option to acquire a Twenty-five Percent (25%) interest in the aforesaid property at any time within Six (6) months after *close of said purchase by Lundgren* ... (Emphasis added).

■ In interpreting the provisions of a contract, we seek to give effect to the reasonable expectations of the parties. *Peterson v. Wirum*, 625 P.2d 866, 872 n. 10 (Alaska 1981). The parties' reasonable expectations are assessed by resorting to "the language of the disputed provision, the language of other provisions of the contract, [and] relevant extrinsic evidence." *Id.*

It is clear that the parties entered into the Agreement with the expectation of receiving and sharing profits arising out of the Palfy Property. Gaudiane "was to put [the property] in the hands of someone that had money, and the ability to develop the property" so that Fern Palfy, Lundgren and Gaudiane "made something down the line." When asked why Gaudiane wanted him to purchase the property, Lundgren testified that he "could buy it and make some money on it." In light of the parties' financial expectations, the term "close of said purchase by Lundgren" includes Lundgren's exercise of a right over the property for valuable consideration. Although Lundgren never purchased the Palfy Property, he exercised his right to assign the option and received valuable consideration for doing so.

Lundgren's assignment of the option for valuable consideration triggered Gaudiane's option to acquire a 25% interest in the profits. In essence, the parties expected that if Lundgren made a profit on the property, whether in the form of ownership or transfer of interest, Gaudiane could acquire 25% of such profit.

We conclude that the trial court erred by instructing the jury that April 2, 1982 constituted the close of purchase, triggering Gaudiane's option. Gaudiane timely exercised his option in August 1983 and is entitled to 25% of the profits from the assignment. However, the Agreement provides that Gaudiane must reimburse Lundgren for 25% of all "out-of-pocket expenditures incurred ... in the acquisition, maintenance, promotion and development of said property" in order to acquire his 25% interest. Therefore, Gaudiane is entitled to 25% of the profits from the assignment offset

by his 25% share of Lundgren's out-of-pocket expenditures.

## IV. DID THE COURT ERR IN GRANTING LUNDGREN'S MOTION FOR DIRECTED VERDICT ON THE AMBASSADOR APARTMENTS CLAIM?

■ At the close of trial Judge Van Hoomissen granted Lundgren's motion for directed verdict on the Ambassador Apartments claim because 1) the oral agreement fell within the statute of frauds; 2) there was no mutual assent to form a partnership contract; and 3) there was no consideration.[7]

Gaudiane argues that the motion should have been denied because 1) part performance removes the contract from the statute of frauds and oral partnership agreements for the purpose of dealing in lands do not fall within the statute; and 2) viewing the evidence in a light most favorable to Gaudiane, a jury could have found mutual assent and consideration.

Gaudiane contends that the partnership agreement was formed at several luncheon meetings with Lundgren. Gaudiane initially brought information concerning the Ambassador Apartments to Lundgren. Lundgren supposedly "nodded", indicating he

was interested in the project. When Lundgren asked Gaudiane what he wanted out of this deal, he said "I want 50 percent ... you know, coming from moneys due me on the five acres." According to Gaudiane, Lundgren nodded again.[8] Gaudiane then took Lundgren to look at the property and introduced him to Pat Rice, a broker.

At this time Gaudiane believed there was a partnership agreement between he and Lundgren. After Lundgren's bid on the property was accepted, Gaudiane asked Lundgren how they were going to handle "this partnership thing." Lundgren exploded, telling Gaudiane to stop harping on the partnership agreement or he would kick Gaudiane's "teeth out." Gaudiane testified that there was no written agreement because Lundgren "was gonna kick my teeth out and that was the agreement."

Gaudiane claims that Lundgren gave his implied consent to the agreement and that his "two nods" demonstrate mutual assent. Gaudiane's detrimental reliance on these nods constitutes consideration for the agreement.[9]

In reviewing motions for a directed verdict or for judgment n.o.v., this court must view the evidence in a light most favorable to the non-moving party and determine,

---

7. Gaudiane raised this claim in his answer to Lundgren's third party complaint against Gaudiane's corporation FREDCO. Gaudiane did not amend his complaint to bring this claim on his own behalf nor was FREDCO ever made a party to the suit. Lundgren claims this issue was never properly before the trial court or this court. However, this issue was tried with at least the implied consent of Lundgren. Under Civil Rule 15(b), if an issue is not raised in the pleadings but is tried with the implied consent of the parties, the issue is treated as if it had been raised in the pleadings. Technically, FREDCO, not Gaudiane, must respond or counterclaim to the third party complaint. Although Gaudiane never made a motion to conform the pleadings to the evidence, both counsel elicited testimony concerning the Ambassador Apartments claim. Lundgren never objected to the evidence. The motion for directed verdict recognizes this fact. Therefore, we address this claim.

8. On cross-examination, Gaudiane indicated that Lundgren did not say yes or no to Gaudiane's request.

9. Lundgren presented evidence demonstrating that a partnership agreement never existed. For instance, Clymer testified:

> that [Gaudiane] would exchange his 25 percent interest in Chena Bend Properties for 50 percent interest in the Ambassador Apartments, that he would manage it, that he would take the penthouse apartment as his in running it, and Jim then told Dannie no, that's not the way it is, that's not the way it's gonna be, because I believe they had decided on a bid price, and Jim Lundgren told Dannie Gaudiane that if he wanted to bid by himself or with somebody else on the Ambassador Apartments, Jim Lundgren said he would not bid on them, that if Dannie wanted—if he thought the Ambassador Apartments were such a good deal and was going to get the bid, that he did not want any partners—he explicitly stated this—that he could do this deal on his own and that he did not want any partners at all involved with it. Dan Gaudiane did not respond.

without weighing the evidence or judging the credibility of witnesses, whether the evidence is such that reasonable people could not differ in their judgment. *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978), *disapproved on other grounds, Native Alaskan Reclamation and Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984). The test is objective; if there is room for diversity of opinion among reasonable people, the question is one for the jury. *Id.*

Viewing the evidence in a light most favorable to Gaudiane, reasonable minds could not differ on the question of whether an oral partnership agreement was formed. Two nods in the course of the conversation Gaudiane claims occurred is simply insufficient evidence to submit to the jury on the questions of mutual assent and consideration to form a partnership. Therefore the trial court properly granted Lundgren's motion for directed verdict on Gaudiane's Ambassador Apartments claim.

The decision of the trial court is REVERSED in part, AFFIRMED in part and REMANDED for the trial court to enter judgment consistent with this opinion.