Daniel GAUDIANE, Appellant and
Cross–Appellee,

v.

James LUNDGREN, Appellee and
Cross–Appellant.

Nos. S–1958, S–2016.

Supreme Court of Alaska.

April 15, 1988.

As Amended May 31, 1988.

Edward A. Merdes, Fairbanks, for appellant and cross-appellee.

Gail M. Ballou, Fairbanks, for appellee and cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

This appeal and cross appeal arise from a dispute concerning the terms of a judgment mandated by this court's decision in *Gaudiane v. Lundgren,* 723 P.2d 1267 (Alaska 1986) *(Gaudiane I).*

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case and the first appeal arise from the following facts. Some of the following background information comes from *Gaudiane I*, 723 P.2d 1267.

Daniel Gaudiane and James Lundgren entered into a Memorandum of Agreement (agreement) which contained three paragraphs. Under paragraph one, Gaudiane was to receive $50,000 for services rendered in negotiating the sale of certain property to Lundgren from Fern Palfy's estate. Under paragraph two, Gaudiane was granted an option to acquire a 25% interest in the property within six months after the "close of said purchase by Lundgren," but only if he reimbursed Lundgren for 25% of the costs of acquiring the property "to date" and if he assumed a 25% share of the expenditures "thereafter arising in the acquisition, maintenance, promotion and development of the property." The third paragraph stated that the agreement was contingent upon Lundgren and a representative of Fern Palfy signing a 42–month option on the property for $800,000.

In April 1982 Palfy's representative and Lundgren signed a 42–month lease with an option to purchase the property for $800,000. The parties refer to this document as a Ground Lease and Purchase Agreement (GLPA). On July 20, 1983 Lundgren assigned his interest in the GLPA to Dick Fischer for $505,000.[1] Shortly thereafter Gaudiane tried to exercise his option to acquire a 25% interest in the property. Lundgren refused and the case went to trial on several issues. On appeal we held that the assignment by Lundgren to Fischer triggered Gaudiane's right to exercise his option. We stated:

> Gaudiane timely exercised his option in August 1983 and is entitled to 25% of the profits from the assignment. However, the Agreement provides that Gaudiane must reimburse Lundgren for 25% of all "out-of-pocket expenditures incurred ... in the acquisition, maintenance, pro-

motion and development of said property" in order to acquire his 25% interest. Therefore, Gaudiane is entitled to 25% of the profits from the assignment offset by his 25% share of Lundgren's out-of-pocket expenditures.

*Gaudiane I*, 723 P.2d at 1272.

We remanded the matter to the trial court to enter judgment in favor of Gaudiane in a manner "consistent with this opinion." 723 P.2d at 1274. The issue in this appeal is how to calculate 25% of the profits from the assignment of the lease option.

Shortly after we published *Gaudiane I*, Gaudiane filed a proposed judgment based on his interpretation of our opinion. He requested a lump sum payment representing: the $50,000 commission fee, one-fourth of the cash already paid by Fischer to Lundgren plus the value of one-fourth of the future payments due on the Fischer note, less one-fourth of the expenses incurred up to the assignment, compounded prejudgment interest, attorneys fees and costs. Lundgren objected to the proposed judgment, arguing that Gaudiane is entitled to a 25% interest in the note but he is not entitled to have Lundgren advance him funds before Lundgren receives them from Fischer. Lundgren argued alternatively that if the court awarded a lump sum then the future payments should be reduced to present value. In any event Lundgren argued that prejudgment interest should not be compounded. Finally, Lundgren contended that Gaudiane miscalculated the out-of-pocket expenses.

Both parties disagree over which expenses should offset the amount Lundgren owes Gaudiane as a result of the lease-option assignment. Clearly, all title clearing expenses incurred up to the date of the assignment must be offset. Since *Gaudiane I* was decided Lundgren has continued to incur expenses in clearing title to the property. This is because the Gaudianes' trustee in bankruptcy has initiated bankruptcy proceedings in an attempt to set aside the foreclosure and subsequent sale

---

1. When Lundgren sold the lease-option to Fischer, Lundgren received a downpayment of $155,000 and a nonrecourse promissory note for $350,000. At least until September 1986 Fischer has made yearly payments of $40,000 on the note.

to Lundgren.[2] Lundgren seeks to charge 25% of these ongoing expenses to Gaudiane. Gaudiane argues that the only expenses that may be offset are those which occurred before trial in *Gaudiane I*.

In response to the motions on Gaudiane's proposed judgment, the trial court ordered that Gaudiane should "recover [his] entire judgment against [Lundgren]. However, said judgment must be reduced to present value." It then ordered simultaneous briefing on the reduction of the judgment. The trial court adopted the calculations of Lundgren's expert. Both parties appeal.[3]

## II. DISCUSSION

When an appellate court issues a specific mandate a trial court has no authority to deviate from it. *King v. Alaska State Hous. Auth.*, 571 P.2d 1010, 1011 (Alaska 1977). However, the trial court may take action which is not inconsistent with the appellate court's decision. *Id.* at 1012. Whether a trial court acted inconsistently with this court's mandate is a question of law. *Cf. Guin v. Ha*, 591 P.2d 1281, 1284 & n. 6 (Alaska 1979).

The principal issue on appeal is the proper interpretation of our statement that Gaudiane "is entitled to 25% of the profits from the assignment...." 723 P.2d at 1272. The intent of *Gaudiane I* was to place Gaudiane in the position he would have occupied had Gaudiane participated in the Fischer transaction from the beginning. Had Gaudiane been permitted to exercise the option in July 1983, under the terms of the agreement he would have paid 25% of the costs incurred up to July 1983, he would have been obligated to pay 25% of the continuing expenditures arising from the acquisition, maintenance, promotion and development of the property, and he would have received a 25% interest in the note and deed of trust entitling him to yearly installments.

Our opinion explained that "if Lundgren made a profit on the property, whether in the form of ownership or transfer of interest, Gaudiane should acquire 25% of such profit." 723 P.2d at 1272. We hold that 25% of "such profit" means 25% of what Lundgren himself received. Lundgren received a cash downpayment and the right to collect future payments. We hold that the trial court correctly awarded Gaudiane one-fourth of the past payments but erred in requiring that Lundgren cash out Gaudiane's share. Gaudiane must wait for each installment as it is paid.

Further, we conclude that Gaudiane's recovery should be offset by the ongoing title clearing expenses which Lundgren continues to incur. While we understand Gaudiane's wish to terminate his business relationship with Lundgren, future expenses are too speculative to calculate. Under the terms of the agreement Gaudiane is responsible for ongoing expenses arising from the acquisition and development of the property. To award Gaudiane a lump sum today might give Gaudiane a windfall and unfairly penalize Lundgren.

Finally, we conclude the trial court properly used simple interest calculation in computing prejudgment interest. *See State v. Doyle*, 735 P.2d 733 (Alaska 1987); *In re Estate of Gregory*, 487 P.2d 59, 63–64 (Alaska 1971). *See also Alyeska Pipeline Serv. Co. v. Anderson*, 669 P.2d 956 (Alas-

---

**2.** Following our decision in *Aiello v. Clark*, 680 P.2d 1162 (Alaska 1984), Josephine Gaudiane's trustee in bankruptcy moved to reopen her bankruptcy case. In a motion filed May 17, 1985 the trustee argues that the foreclosure proceedings were null and void and that the record legal title to the property is still in Daniel and Josephine Gaudiane. The trustee further argued that the "property is now worth many millions of dollars" and "if the appreciation can be realized, the creditors of Daniel and Josephine Gaudiane may be paid in full...." Concurrently, the trustee moved to vacate and set aside the judgment conveying the property out of the Gaudianes' bankruptcy estates. The record is unclear as to whether Josephine's case was reopened. However, it is undisputed that following the trial in *Gaudiane I* Lundgren incurred title clearing expenses arising from bankruptcy court proceedings.

**3.** The appeal and cross appeal raise several other issues which we need not address because of our disposition of the case.

ka 1983) (post-judgment interest is not compounded).

### III. CONCLUSION

We AFFIRM in part and REVERSE in part. We REMAND this case for an entry of judgment for Gaudiane which places the parties in the position that would have resulted but for Lundgren's breach. Because Lundgren has incurred additional title clearing and acquisition expenses since the trial in *Gaudiane I,* on remand the trial court is free to take additional evidence on the amount of post-trial expenses. *See, e.g., Laing v. Laing,* 741 P.2d 649, 653 n. 4 (Alaska 1987).