In the Matter of S.H.

No. S–9633.

Supreme Court of Alaska.

Aug. 9, 2002.

Rehearing Denied Oct. 8, 2002.

Phillip Paul Weidner, Weidner & Associates, Inc., Anchorage, for Appellant.

Thomas V. Van Flein, Clapp, Peterson & Stowers, LLC, Anchorage, for Clapp, Peterson & Stowers.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

S.H. was adjudged to be in need of a special conservator in 1997 regarding litigation he was pursuing against Anchorage Refuse, Inc. After we affirmed the appointment of a conservator in 1999, S.H.'s conservator moved to finalize a settlement entered into in 1997. At that time, S.H. petitioned the superior court to terminate the conservatorship, claiming that he was competent to manage his affairs. The superior court denied the petition to terminate, entered the settlement, and dismissed S.H.'s litigation against Anchorage Refuse. S.H. appeals the superior court's refusal to hold a hearing on the need for a conservatorship and its refusal to void the actions of the conservator settling the Anchorage Refuse litigation. Because the conservator entered into the settlement in 1997 and our decision in *S.H. I* was a ratification of that settlement, we affirm the superior court's entry of settlement and dismissal of the litigation.

## II. FACTS AND PROCEEDINGS

This case is before us for a second time. It concerns the superior court's actions following our remand in *In re S.H.* (*S.H.I* ).[1]

### A. *In re S.H.*

After working at Anchorage Refuse, Inc. (ARI) from 1991 to 1993, S.H. sued ARI in April 1995 alleging, among other things, that his fellow employees sadistically mistreated him.[2] His attorneys in that action were from the law firm of Clapp, Peterson, & Stowers

---

1. 987 P.2d 735 (Alaska 1999).

2. *Id.* at 737. S.H. also named individual ARI officers and employees in that suit. *Id.*

(CPS).[3] Between May 1995 and December 1996, CPS attorneys Marcus Clapp and Thomas V. Van Flein grew uneasy with S.H.'s increasing obsession with the case.[4] S.H. began showing signs of instability, "including irrational behavior, paranoia, inclinations toward gratuitous dismissal of his personal injury suit, a tendency to threaten his own witnesses, the desire to initiate direct and inappropriate dealings with opposition counsel and the judge, and a marked lack of confidentiality."[5]

In 1996 and 1997 psychiatric experts examined S.H. in connection with the ARI litigation and because CPS was concerned with S.H.'s behavior.[6] The majority of these doctors concluded that S.H. had a mental impairment that made him unable to think rationally at times.[7] Only one doctor found S.H. to be capable of dealing rationally with the settlement proceedings.[8]

Mediation between S.H. and ARI began in December 1996, and led to a $500,000 settlement offer by ARI.[9] S.H. refused to accept the offer, however, believing his case was worth $2 million.[10] CPS then filed a "Petition for Appointment of Limited Conservator/Guardian Ad Litem of a Person" due to its belief that S.H. was incapable of handling his affairs.[11] Superior Court Judge Karen L. Hunt appointed Ernest Schlereth to act as S.H.'s attorney in the conservatorship/guardianship proceeding on December 30.[12] In March 1997 Phillip Paul Weidner replaced Schlereth as S.H.'s attorney in the conservatorship/guardianship proceeding.[13]

Master Andrew Brown commenced a hearing on the conservatorship/guardianship petition in July 1997, at which time S.H. requested a jury trial.[14] Master Brown denied the request for a jury trial and issued his report in August after a three-day hearing.[15] He recommended that a special conservator be appointed to act on S.H.'s behalf for the purposes of the ARI litigation and that the costs of that conservator be imposed on CPS.[16] The superior court adopted Master Brown's recommendation and appointed Paul Cossman as S.H.'s special conservator.[17] After reviewing S.H.'s case against ARI, Cossman concluded that it was in S.H.'s best interests to accept the $500,000 settlement offer[18] and approved the settlement. The settlement funds were placed in the court registry in order to allow S.H. to appeal the decision to appoint a special conservator and CPS to cross-appeal the imposition of the conservator's costs on CPS.[19]

In August 1999 we decided *S.H. I.* We held that a conservator has the authority to settle a lawsuit; that the court properly considered S.H.'s "ability to make litigation-related decisions, as opposed to his ability to make a rational decision in general"; and that an inability to manage one's property need not be long-term to justify a conservatorship.[20] We further held that the conservator has the authority to waive the protected person's jury trial rights, reasoning that otherwise, the protected person, who had "already [been] deemed incapable in the law's eyes," would retain control of the case.[21] Regard-

3. *Id.*

4. *Id.*

5. *Id.* (internal footnotes omitted).

6. *Id.*

7. *Id.* at 738.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.* at 739–40 (internal quotation marks omitted).

21. *Id.* at 741.

ing S.H.'s request for a jury trial on the conservatorship/guardianship petition, we held that his request, coming more than twenty days after service of the first pleading and not before the first hearing, was untimely under Alaska Probate Rule 11.[22] Finally, we held that it was improper to impose the costs of the conservatorship on CPS and remanded the case to the superior court to impose those costs in accordance with AS 13.26.230.[23]

## B. On Remand

Judge Hunt conducted the remand hearing on October 7, 1999. On the remanded cost issue, she directed CPS to file a proposed order imposing the conservatorship costs on S.H., and indicated that she would refer the case back to the probate master, who had handled the conservatorship, for all further proceedings. At this time, Weidner indicated that S.H. was fully competent to handle the ARI litigation. CPS filed stipulations for dismissal with prejudice and to distribute settlement funds that same day.

Prior to the hearing before the probate master, S.H. filed a demand for jury trial and an objection to the stipulations for dismissal with prejudice and distribution of settlement funds filed by CPS, Cossman, and ARI. At the hearing on October 27, 1999, Master Brown indicated that his responsibilities were limited, by our remand instructions, to the imposition of conservatorship costs. He approved the costs submitted by CPS and Cossman and told S.H. that, if he wished to change the conservatorship order, he needed to file a written motion.

In November 1999 S.H. filed an objection to Master Brown's failure to address his objections to the stipulations entered into by CPS, Cossman, and ARI. S.H. also filed a motion that month to set aside the conserva-

torship and to void the conservator's decisions. Judge Hunt denied the motion to set aside the conservatorship and issued an order imposing the conservator's costs on S.H. and reaffirming the conservator's authority to settle the ARI litigation.

As the ARI litigation was settled and an order of dismissal was signed by Superior Court Judge Peter A. Michalski in November 1999, CPS refiled the stipulation for the distribution of settlement proceeds in March 2000. In April, Judge Hunt signed the order distributing settlement funds and terminating the appointment of the conservator. S.H. appeals.

## III. STANDARD OF REVIEW

[1–4] We apply our independent judgment to questions of statutory interpretation.[24] In interpreting statutes, "we look to the meaning of the language, the legislative history, and the purpose of the statute in question."[25] Whether a trial court acted inconsistently with our mandate is a question of law.[26] We "adopt the rule of law that is most persuasive in light of precedent, reason and policy."[27]

## IV. DISCUSSION

### A. Weidner Has the Authority To Act as S.H.'s Counsel in this Appeal.

CPS argues that *S.H. I* granted S.H.'s conservator the authority to make litigation decisions on S.H.'s behalf. It contends that, because Weidner never obtained the approval of the conservator to file the present action, the appeal should be dismissed. S.H. responds that Weidner's representation is proper and protected by the conservatorship statutes.

CPS cites *In re Conservatorship of Nelsen*[28] as support for its argument that Weid-

22. *Id.* at 742.

23. *Id.*

24. *Alderman v. Iditarod Props., Inc.,* 32 P.3d 373, 380 (Alaska 2001).

25. *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787 (Alaska 1996).

26. *Gaudiane v. Lundgren,* 754 P.2d 742, 744 (Alaska 1988).

27. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

28. 587 N.W.2d 649 (Minn.App.1999).

ner has no authority to represent S.H. In *Nelsen*, the Minnesota court of appeals held that the conservatee could not contractually retain an attorney without the approval of either the conservator or the court.[29] This reasoning, CPS argues, should apply to the instant case.

The court in *Nelsen*, however, based its decision on the conservatorship order, which required the conservator to approve any contract, except for necessities, which the conservatee might make.[30] The order appointing S.H.'s conservator was not as broad as the order in *Nelsen*. Rather than granting the conservator authority over all contracts, S.H.'s conservator was only given the authority to make "all necessary decisions on [S.H.'s] behalf in the ARI Case, including but not limited to accepting a settlement offer in the ARI Case or proceeding to trial with that litigation." Given the more limited nature of S.H.'s conservatorship, *Nelsen* does not apply.

Furthermore, AS 13.26.195 grants a prospective protected person the right to counsel in the conservatorship proceedings.[31] Weidner is S.H.'s counsel under this statute, having substituted in for the original counsel appointed for S.H. by the court. While Weidner could not take part in any aspect of the ARI litigation, he is properly representing S.H. in the probate proceedings, including S.H.'s petition to terminate the conservatorship and this appeal.

### B. *S.H. I* Controls this Case.

S.H. argues that the conservator did not have the authority to settle the case with CPS and ARI, as he petitioned for termination of his conservatorship. S.H. further argues that the superior court erred in granting the order for distribution of settlement funds and terminating the appointment of the conservator.

In 1997 the special conservator stated that it was in S.H.'s best interest to accept the settlement offer of $500,000 and that S.H.'s chances of recovering a judgment in excess of that offer were "basically nonexistent."[32] Accordingly, the conservator approved the settlement on behalf of S.H. The conservator, CPS, and ARI then "stipulated to interplead the settlement funds."[33] The settlement monies were deposited with the court registry and awaited distribution pending S.H.'s appeal to this court.[34]

Our decision upholding the appointment of a conservator and ratifying his authority to enter into the settlement with ARI was announced in August 1999. On October 7, 1999 the special conservator and CPS filed a stipulation for distribution of settlement funds. That same day, S.H. petitioned to have the conservatorship revoked. However, as the settlement had been entered into in 1997, S.H.'s claim had already been disposed of by the conservator. When this court upheld the conservatorship, the settlement funds in the court registry became S.H.'s. As such, with the distribution of funds, S.H. no longer had an interest in the ARI litigation and the conservatorship was to end by the order of the appointment.

### V. CONCLUSION

Because S.H.'s claims were settled by the conservator in 1997 prior to his petition for termination, the superior court did not err in failing to hold a hearing on S.H.'s petition. Accordingly, we AFFIRM the decisions of the superior court.

BRYNER, Justice, not participating.

**29.** *Id.* at 650.

**30.** *Id.* at 651.

**31.** AS 13.26.195(b) states in part: "Unless the person to be protected has counsel of the person's own choice, the court must appoint a lawyer to represent the person who then has the power and duties of a guardian ad litem."

**32.** *S.H. I*, 987 P.2d at 738.

**33.** *Id.*

**34.** *Id.*