James F. DIERINGER, Jr., Appellant,

v.

Darrel MARTIN, Appellee.

No. S–12400.

Supreme Court of Alaska.

July 3, 2008.

---

**3.** *See supra* Op. at ——.

Cory R. Borgeson, Borgeson & Burns, PC, Fairbanks, for Appellant.

Thomas R. Wickwire, Law Office of Thomas Wickwire, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This case presents an appeal from the superior court's modified award of attorney's fees and personal representative fees. In a prior appeal, we concluded that the estate's personal representative, James Dieringer, breached his fiduciary duty to the estate by engaging in self-dealing and other bad faith conduct. We vacated awards of attorney's fees and personal representative fees and remanded the case for the reconsideration of fees in light of our opinion. On remand, the probate master allowed a full evidentiary hearing spanning the history of the estate, issued new factual findings, and recommended that the fee awards either be reinstated to their original amounts or increased. The superior court rejected the probate master's new findings. The court decided that its earlier award of attorney's fees should not be reinstated in any amount and that a reduced personal representative fee was appropriate. The court ordered counsel to restore the prior award of attorney's fees to the estate. Dieringer appeals the superior court's award of fees and the court's order that his counsel restore the prior award of fees. We affirm.

## II. FACTS AND PROCEEDINGS

We have previously set forth the relevant factual history:

This case involves an estate that remained open for more than seventeen years. William Martin died in 1985. He was survived by two children, Donna, then age fourteen, and Darrel, then age eighteen. His will left everything (after payment of debts and certain expenses) in equal shares to the children, in trust. James Dieringer ("Dieringer" or "PR") was the personal representative, and with his wife Nancy Dieringer, co-trustee of the trust.

The assets of the estate included a house in Fairbanks, a lot on Summit Lake, a motor home, some snowmachines, an escrow, and some life insurance. The net value of the estate was less than $250,000.

. . . .

By 1997 the only remaining assets of the estate were the Summit Lake lot, which was subject to a mortgage, and a loan Dieringer had made to a company that he owned a half interest in. The children agreed that Darrel would receive the Summit Lake property and Donna would receive more cash from the estate. Darrel contacted Dieringer a number of times concerning the Summit Lake property and closing the estate. Dieringer informed Darrel that he wanted to buy the Summit Lake property for $15,000. Darrel had received a substantially larger offer for the

property and was reluctant to agree to sell to Dieringer at Dieringer's price. When this occurred Dieringer took the position that unless [the] Summit Lake [property was] sold to him he would charge the estate fees for his services. Further, he stated that the proceeds of a $50,000 life insurance policy he and Nancy had received when William died were actually owned by him and Nancy, that they had merely loaned the proceeds to the estate, and that the proceeds would have to be repaid. [1]

Based on these facts, Darrel Martin filed a petition to remove James Dieringer as the estate's personal representative.[2] Martin also instituted a separate civil action against Dieringer.[3] In the removal case, the probate master recommended that the superior court reject Martin's petition and uphold Dieringer's conduct. The superior court adopted the probate master's findings and, applying collateral estoppel, dismissed Darrel's civil suit.[4]

Darrel appealed and we reversed both decisions. In the removal appeal we concluded that Dieringer breached his fiduciary duty to the estate by taking out a loan from the estate for a company he owned an interest in (at a preferential interest rate)[5] and demanding that he be allowed to purchase the Summit Lake property for less than fair market value, threatening retaliation if this demand was not satisfied.[6] We also concluded that the $50,000 life insurance policy was meant for the estate, not Dieringer personally, and that Dieringer improperly asserted that he had merely loaned the proceeds to the estate.[7] Based on these conclusions, we determined that Dieringer acted in bad faith with regard to these issues. We vacated the

superior court's award of $16,320 in attorney's fees and $5,850 in personal representative fees to Dieringer and remanded for reconsideration of fees in light of our opinion.[8] On the same day, we reversed the superior court's application of collateral estoppel in Martin's civil suit.[9]

On remand in this case—the removal action—Probate Master Alicemary Closuit, deeming the case "completely open again," held a full evidentiary hearing. The master heard testimony over the course of three days. After this hearing, the master issued new factual findings and a recommendation regarding the personal representative and attorney's fees. The master's new findings covered the whole history of the case, including conduct that we considered in our initial opinion such as the self-dealing loan, the dispute over the Summit Lake property, and the ownership of the insurance proceeds. The master's findings contradicted some of the earlier findings and characterizations made by the master that we relied on in our earlier opinion.

The master recommended that the superior court uphold its prior award of attorney's fees and either uphold the prior award of personal representative fees or increase them. The master concluded that "[n]othing in [Dieringer's attorney and estate representative] charges relates to any action the Supreme Court found to be made in bad faith."

Superior Court Judge Niesje J. Steinkruger rejected the master's findings as clearly erroneous. The court rejected the master's recommendation concerning attorney's fees to Dieringer and decided no fees should be awarded. The court approved Dieringer's

1.  *Martin v. Dieringer*, 108 P.3d 234, 235–36 (Alaska 2005).

2.  *Id.* at 236.

3.  *Martin v. Dieringer*, Mem. Op. & J. No. 1203, 2005 WL 503637, at *1 (Alaska, March 4, 2005); *see also Martin*, 108 P.3d at 236. This action is ongoing.

4.  *See Martin*, 108 P.3d at 236.

5.  *Id.* at 237–38. The loan's rate was at a savings account rate of interest. *Id.* at 238.

6.  *Id.* at 239–40.

7.  *Id.* at 238, 240.

8.  *Id.* at 236, 241.

9.  *Martin v. Dieringer*, Mem. Op. & J. No. 1203, 2005 WL 503637, at *1 (Alaska March 4, 2005). While the estate was closed prior to the appeal to our court, we determined that the removal petition case was not moot because of the collateral estoppel effect it had on the civil action. *Martin*, 108 P.3d at 236.

personal representative fees in a reduced amount.

The superior court reasoned that the attorney's fees previously awarded—$16,320— were generated in defense of Martin's petition to remove Dieringer as personal representative. The court found that Dieringer's bad faith actions comprised major issues in the removal litigation and that Dieringer's defense was not undertaken with the intent to benefit the estate's beneficiaries. The court concluded that Dieringer was entitled to no money from the estate for his unsuccessful defense. The court required that Dieringer's law firm, Borgeson & Burns, restore these fees to the estate.

The superior court also reduced Dieringer's personal representative fees by $1,390, to $4,460. The $1,390 comprised fees related to preparing for and defending against Martin's suit. The court reasoned that the disallowed fees were not part of Dieringer's reasonable compensation because they were not incurred to benefit the estate or the beneficiaries. The court ordered Dieringer to restore $1,390 to the estate.

While the superior court initially ordered that the excess paid by the estate be restored to the estate, its judgment provided that the money be paid directly to Darrel Martin. The estate was closed in May 2003, prior to the first appeal to this court.

Dieringer moved for reconsideration; the superior court denied his motion. He now appeals.

## III. STANDARD OF REVIEW

When a superior court adopts a master's findings, those findings become the findings of the superior court.[10] We will not set aside a superior court's findings of fact unless those findings are clearly erroneous.[11] When a superior court rejects a master's factual findings, this court will review the rejection de novo.[12] Whether a personal representative litigated in good faith is a question of fact.[13] We use our independent judgment when reviewing questions of law.[14]

## IV. DISCUSSION

### A. The Superior Court Properly Rejected the Probate Master's New Findings and Recommendation.

Dieringer challenges the superior court's rejection of the probate master's new factual findings. He also challenges the superior court's refusal to increase his fee award on remand. Because the probate master disregarded the law of the case doctrine, adopted an untenable interpretation of the scope of this court's remand order, and issued new factual findings that were clearly erroneous, we conclude that the superior court properly rejected the probate master's factual findings.

#### 1. The probate master's new findings violated the law of the case doctrine and exceeded the scope of this court's remand order.

The probate master erred when she deemed this case "completely open again." The case did not return to her as a blank slate. Rather, only fee issues remained.

In *Wolff v. Arctic Bowl, Inc.* we explained that

[t]he doctrine of the law of the case prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case. Even issues not explicitly discussed in the first appellate opinion, but directly involved with or "necessarily inhering" in the decision will be considered the law of the case. [15]

The law of the case is both a doctrine of economy and of obedience to the judicial

10. Alaska R. Civ. P. 52(a).

11. *Id.*

12. *Sloan v. Jefferson,* 758 P.2d 81, 85 (Alaska 1988).

13. *Enders v. Parker (Enders II ),* 125 P.3d 1027, 1030–31 (Alaska 2005).

14. *Id.* at 1029.

15. 560 P.2d 758, 763 (Alaska 1977) (internal citations omitted).

hierarchy.[16] The doctrine applies to all previously litigated issues unless there are "exceptional circumstances presenting a clear error constituting manifest injustice."[17]

Before the first appeal in this case, in early 2002, the master held a two-day hearing considering Martin's removal petition. All of the factual topics now raised on appeal were litigated at that hearing. The master found that Dieringer had loaned money from the estate to a business that he held an interest in, that Dieringer had demanded that he be allowed to buy the Summit Lake property at a price $8,000 below a third party's offer, and that Dieringer and his wife claimed that the insurance proceeds belonged to them personally and asserted that they had simply loaned the proceeds to the estate. These factual findings involved issues that were central to Martin's removal petition.

■ Dieringer now argues that there is new evidence suggesting that this court's conclusions regarding the self-dealing loan, the Summit Lake property, and the insurance proceeds are wrong. He argues that the newly developed testimony demonstrates that he had reasonable grounds to defend against Martin's challenges, suggesting that he defended in good faith. He does not explain his apparent failure to present this evidence at the initial hearing. The probate master, in her new recommendation, likewise did not explain why this evidence was not adduced at the original hearing. In the absence of any such explanation, there are no exceptional circumstances to justify departing from the law of the case doctrine.[18] The

probate master's acceptance of testimony contradicting the conclusions reached in our prior opinion was mistaken.

■ Moreover, the probate master ignored the scope of this court's remand order when she allowed a hearing covering issues that spanned the history of the estate. Our prior decision was clear. We concluded the opinion by stating, "[f]or the foregoing reasons, we ... REMAND this case for reconsideration of attorney's fees and fees of the personal representative in light of the conclusions expressed herein."[19] The conclusions referred to were "that Dieringer had committed breaches of fiduciary duties and acts of bad faith."[20] We did not remand for reconsideration of these conclusions. Rather, given these conclusions, the court was directed to reconsider the fee awards.[21] The superior court, in its decision rejecting the probate master's recommendation, properly recognized the scope of the remand.

### 2. The probate master's new factual findings were clearly erroneous.

■ Apart from procedural bars to the master's new findings, we agree with the superior court that the probate master's new findings were clearly erroneous. Significantly, in reaching her new factual findings the master provided no reasons for overturning her prior findings.

In her new findings, the master briefly mentioned the self-dealing loan, but failed to recognize that Dieringer breached his fiduciary duty by making it.[22] The master found that Dieringer acted properly with regard to

---

**16.** *See* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §§ 4478, 4478.3 (2d ed.2002) (hereinafter FEDERAL PRACTICE AND PROCEDURE).

**17.** *Petrolane Inc. v. Robles*, 154 P.3d 1014, 1026 (Alaska 2007) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003)).

**18.** 18B FEDERAL PRACTICE AND PROCEDURE, *supra* note 16, § 4478, at 680–83 (discussing the impact of new evidence on the law of the case and explaining that "[e]vidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial").

**19.** *Martin v. Dieringer*, 108 P.3d 234, 241 (Alaska 2005).

**20.** *Id.* at 240.

**21.** *See Petrolane Inc.*, 154 P.3d at 1026–27; *see also Carlson*, 65 P.3d at 873–74 (observing that "[s]uccessive appeals should narrow the issues in a case, not expand them"); *Gaudiane v. Lundgren*, 754 P.2d 742, 744 (Alaska 1988) ("When an appellate court issues a specific mandate a trial court has no authority to deviate from it.").

**22.** *Martin*, 108 P.3d at 238.

the Summit Lake property, but not did explain why her previous findings—including that Dieringer "demanded" that he be allowed to purchase the property—were mistaken. Likewise the master did not explain her reasons for suggesting that Dieringer merely "comment[ed]" on the insurance proceeds when her prior findings stated that Dieringer asserted his "belie[f]" that the proceeds were his. Finally, the master changed her prior calculation of estate representative fees—increasing the amount of money she thought Dieringer was owed—without explaining why she was now adopting hourly rates for Dieringer's work that were greater than the rates she previously used. The master's new findings leave us with a definite and firm conviction that they are mistaken.

## B. The Superior Court Did Not Err when It Disallowed Dieringer's Attorney's Fees.

Dieringer challenges the superior court's decision to award him no money from the estate for attorney's fees he incurred in the defense of Martin's removal petition. Because we reject Dieringer's new factual arguments, we only consider his argument that the superior court made an insufficient finding of bad faith to justify its decision.

Alaska Statute 13.16.435 governs a personal representative's litigation expenses. The statute provides: "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred." In *Enders v. Parker* (*Enders I* ) we explained that a "personal representative . . . who has prosecuted or defended a probate action in good faith is entitled to recover all necessary expenses and disbursements, regardless of whether he or she prevailed in

the action." [23] There is no requirement that the litigation benefit the estate. [24]

We recognize that a wide array of evidence can be considered when ascertaining whether litigation was conducted in good faith by a personal representative. [25] However, a major factor is the presence or absence of reasonably arguable grounds for the representative's litigation position. "[T]he presence or absence of reasonably arguable grounds creates a presumption of good faith or lack of good faith, respectively. This presumption can be rebutted by evidence sufficient to establish good faith or lack thereof, as the case may be." [26] Reasonably arguable grounds do not exist merely because the estate representative survived summary judgment or would have survived it. [27] "The standard for determining whether reasonably arguable grounds existed will vary according to what the personal representative sought to accomplish." [28]

The superior court's decision to disallow attorney's fees incurred in defending against Martin's removal action is amply supported. Martin's action was for removal of the estate representative based on his claimed misconduct. Dieringer attempted to defend his actions. But we ultimately concluded that Dieringer committed intentional bad faith acts.

> Dieringer breached his fiduciary duties as a trustee. He engaged in self-dealing when he made a loan with the estate assets to a company in which he had an interest. He improperly, albeit equivocally, claimed that the $50,000 life insurance proceeds were his individually rather than as trustee, and he engaged in self-dealing when he attempted to purchase the Summit Lake property for less than fair market value. The breaches were intentional and are equivalent to bad faith. [29]

Given this misconduct, Dieringer lacked reasonably arguable substantive grounds to de-

**23.** 66 P.3d 11, 14 (Alaska 2003).

**24.** *Id.*

**25.** *See Enders v. Parker* (*Enders II* ), 125 P.3d 1027, 1030 (Alaska 2005).

**26.** *Id.*

**27.** *Id.* at 1031–32.

**28.** *Id.* at 1032.

**29.** *Martin,* 108 P.3d at 240.

fend against the removal petition. His conduct was not reasonably defensible.

### C. The Superior Court's Decision To Reduce Dieringer's Estate Representative Fees Is Supported by the Evidence.

Dieringer argues that the superior court erred in two ways: by failing to increase his award of personal representative fees and by reducing its prior award of fees. In light of our decision that the superior court's action in reducing the fees was justified, we have no reason to address Dieringer's claim that a larger fee should have been awarded.

Alaska Statute 13.16.430 governs compensation for personal representatives. The statute provides in relevant part: "A personal representative is entitled to reasonable compensation for services." While the statute does not expressly condition compensation on the representative's good faith actions, this requirement is encompassed by the statute's allowance for "reasonable compensation." [30]

The superior court vacated personal representative fees related to preparing for and defending the removal action, determining that these fees were not within the bounds of reasonable compensation. While Dieringer argues that the superior court did not explicitly find that he acted in bad faith, the superior court stated that these fees "shall be disallowed as they were not fees incurred to benefit the estate or the beneficiaries." More specific bad faith language can be found in the superior court's consideration of attorney's fees, which also denied fees related to the defense of the removal petition, where the court explained: "His defense was unsuccessful and on the major issues, he was found to have acted in bad faith. His actions in litigating against the beneficiary were not actions taken with the intent to benefit the beneficiaries."

■■■ The superior court's decision to reduce Dieringer's personal representative fees is sound. The superior court only disallowed fees incurred after December 2000 because

that was when the bad faith defense began. Dieringer's intentional bad faith actions as representative doomed the defense on the substantive conduct issues in the removal litigation. Reasonable compensation does not extend to a personal representative's unreasonable defense in removal litigation.

### D. The Superior Court Did Not Err when It Ordered Dieringer's Law Firm To Return Attorney's Fees.

Dieringer challenges the order requiring his counsel to restore to the estate the attorney's fees (in the amount of $16,320.89) that the court had previously approved. These fees were incurred in the defense of the removal proceedings.

In our prior opinion we ordered that the award of these fees be vacated and remanded the case with instructions that they be reconsidered in light of the other conclusions expressed in our opinion.[31] As already noted, the superior court decided that no fees should be awarded for the defense of the removal petition. We have concluded in Part B of the present opinion that this decision was proper. Dieringer's argument that we now consider is that the court should not have ordered his counsel to restore the fees to the estate. He claims that the order of restoration deprived counsel of due process because they were not parties to the litigation and were not given an opportunity to be heard.

■■■ For purposes of this argument, we take as established that the superior court properly declined to reinstate any portion of the prior award of fees that we ordered vacated and that the funds ordered restored were previously paid to counsel. Based on these assumptions, we consider first the claim that the restoration order should not have run against counsel because they were not named parties.

■■■ We think that this claim lacks merit. Counsel prepared the original request for attorney's fees. They have participated as counsel in subsequent proceedings

---

**30.** *See* AS 13.16.350(a) (emphasizing a personal representative's fiduciary duty).

**31.** *Martin,* 108 P.3d at 241.

leading up to and including the order of restoration. Courts have considered counsel to be de facto parties in probate proceedings concerning attorney's fees that are awarded to them.

> By the very nature of an attorney fee application prepared by the attorney, the attorney is the real party in interest and is subject to the jurisdiction of the court to the extent the fee is later attacked. [32]

> On a hearing of objections to the confirmation of the final report of an administrator or executor, the latter's attorney is, in the very nature of things, a "party" to the proceeding and is subject to the jurisdiction of the court whenever, and to the extent that, his fee is attacked. [33]

Based on these authorities, we conclude that counsel may properly be considered as de facto parties in this proceeding.

▮▮▮ The remaining question is whether counsel had notice and an opportunity to be heard regarding the restoration issue. As previously stated, this court vacated the attorney's fees award and directed that further proceedings be conducted in the superior court to reconsider the award. Counsel fully participated in the proceedings before this court and before the superior court. They are charged with knowledge that any portion of the award that was vacated and not reinstated by the superior court would necessarily have to be repaid. As the Iowa Supreme Court observed in *Estate of Borrego:*

> [T]he court's authority to vacate fees carries with it authority to enter judgment for the return of the fee to the extent that it is excessive. Subject to notice and the opportunity to defend, the court may order the attorney to return any portion of the fee later found excessive. [34]

Counsel were given the opportunity to and did fully present the case for a renewed award of fees. Counsel do not suggest that different contentions would have been presented if counsel were named parties. Under these circumstances we conclude that counsel were accorded both notice and an opportunity to be heard. We therefore conclude that the order of restoration does not violate due process.

### E. The Superior Court Erred in Part when It Ordered that the Excess Fees Paid by the Estate Be Returned to Darrel Martin.

Dieringer finally argues that the superior court erred by not having the excess fees restored to the closed estate. He contends that the superior court's final judgment in favor of Darrel Martin was inconsistent with its prior order that the fees be returned to the estate. Darrel responds that this inconsistency is not important because he is a beneficiary of the estate and that reopening the estate would be a wasted added step.

In light of the fact that the estate was open for an excessive period of time and has been closed for years, we reject Dieringer's invitation to reopen it. However, we recognize that the estate had two beneficiaries— Darrel and Donna Martin. While the two may have an agreement covering the disposition of the funds,[35] it seems prudent to provide for the possibility that this is not so. Therefore Donna should be added to the judgment and she should be given notice of the award. If there turns out to be a dispute between the Martins concerning the funds, the fact that both are named in the judgment should not be understood as resolving their dispute. Rather, further proceedings will have to be conducted.

## V. CONCLUSION

For the reasons stated above the judgment of the superior court should be modified on

---

32. *In re Estate of Borrego,* 490 N.W.2d 833, 837 (Iowa 1992).

33. *In re Peterson's Estate,* 12 Wash.2d 686, 123 P.2d 733, 746–47 (1942); *cf. Rose v. Alaskan Vill., Inc.,* 412 P.2d 503, 507–09 (Alaska 1966) (attorney permitted to appeal on inadequacy grounds in his own name attorney fee award made to client).

34. 490 N.W.2d at 836 (internal citations omitted).

35. Darrel and Donna agreed that Darrel would receive the Summit Lake property and Donna would receive extra cash from the estate. *Martin,* 108 P.3d at 236. Later, the Summit Lake property was sold and the proceeds went into the estate. The payment to Borgeson & Burns and Dieringer came from these funds.

REMAND to run in favor of Darrel Martin and Donna Martin. As so modified, the judgment is AFFIRMED.