No. 03-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 98

IN THE MATTER OF THE ESTATE OF
DOROTHY ANN LEIPER McMURCHIE,

       Deceased.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                      In and for the County of Yellowstone, Cause No. DP 99-256,
                      The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

       For Appellant (Mary C. McMurchie):

           Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

       For Respondent (David J. McMurchie):

           Jeffery A. Hunnes, Wright Tolliver Guthals, P.C., Billings, Montana

Submitted on Briefs:  November 25, 2003

Decided:  April 20, 2004

Filed:

_____
                         Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 David McMurchie, as personal representative of the Estate of Dorothy McMurchie, filed his Petition to Approve Accounting and for Settlement and Distribution of a Testate Estate. His sister, Mary McMurchie, filed objections to the accounting and proposed distribution. The District Court approved the petition. Mary appeals. The following issues are presented:

¶2 1) Whether the District Court's order appointing personal representatives was timely appealed, and if so, whether the District Court properly appointed Dorothy's sons as personal representatives.

¶3 2) Whether the District Court properly treated expenses paid from Dorothy's estate for upkeep on the house bequeathed to Mary, and in which Mary has lived since Dorothy's death, as an advance against Mary's share of the residue of Dorothy's estate.

¶4 3) Whether the attorney's fees approved by the District Court were reasonable, necessary, and fairly allocated to Dorothy's estate.

¶5 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Boyd McMurchie (Boyd Sr.) and Dorothy McMurchie had three children, Boyd, (Boyd Jr.), David, and Mary. Dorothy's will named Boyd Sr. as personal representative, with Boyd Jr. and David as alternates if Boyd Sr. predeceased her. Boyd Sr. died January 6, 1999, and a probate was opened in South Dakota by Boyd Jr. Shortly after Boyd Sr.'s death, Mary began making allegations against Boyd Jr. and David that they had unduly influenced Boyd Sr. in making estate planning decisions. In July 1999, Mary petitioned in

2

the Montana Thirteenth Judicial District Court, Yellowstone County, for guardianship of Dorothy's person, and for a conservator to be appointed for Dorothy's property. Dorothy was ninety-three years old at that time and a resident of Billings, Montana. In September 1999, Mary was named guardian and an institutional conservator was appointed for Dorothy's property. Dorothy died on October 26, 1999. Boyd Jr. commenced a District Court probate proceeding for Dorothy's estate in Montana on November 30, 1999, by seeking appointment of himself as personal representative, and appointment of a special administrator to represent any interest Dorothy's estate may have had in her husband's property in South Dakota. Mary objected to Boyd's appointment as personal representative. Between October and November 1999, Mary filed complaints against Boyd Jr. with the South Dakota Judicial Standards Commission, the South Dakota Attorney General, and the Billings Police Department. On January 21, 2000, Mary petitioned to have Boyd Sr.'s will probated in Montana. Boyd Jr. and David objected on grounds that Boyd Sr. had no remaining property in Montana. On January 27, 2000, Boyd Jr. and David filed a declaratory judgment action in South Dakota to have the ownership of six financial accounts judicially determined. In May 2000, the District Court granted a motion to consolidate the two Montana probate cases. In May 2001, the declaratory judgment action was tried in South Dakota. Mary's attorney appeared on her behalf but left the trial at the first recess. The court determined that the accounts were jointly held by Boyd Sr., Boyd Jr., and David, and that Boyd Sr.'s estate plan had not been unduly influenced by his sons. In June 2001, the District Court appointed Boyd Jr. as personal representative of Dorothy's estate, with David as alternate, and denied Mary's objections. On September 27, 2001, the District Court granted the Petition for Formal Probate of Dorothy's Will, determined testacy and heirs, and

formally appointed David as personal representative, Boyd Jr. having renounced his appointment. In August 2002, David petitioned the District Court to approve the accounting and proposed distribution of Dorothy's estate. Mary again objected. In November 2002, the District Court granted David's petition. It is from this decision that Mary appeals.

## STANDARD OF REVIEW

¶7    We review the appointment of a personal representative according to § 72-3-502, MCA, to determine whether a district court has correctly interpreted the law. *Estate of Peterson* (1994), 265 Mont. 104, 110, 874 P.2d 1230, 1233.

¶8    We review an award of attorney's fees to determine whether a district court has abused its discretion. *Hauck v. Seright*, 1998 MT 198, ¶ 43, 290 Mont. 309, ¶ 43, 964 P.2d 749, ¶ 43.

## DISCUSSION

### ISSUE ONE

¶9    Whether the District Court's order appointing personal representatives was timely appealed, and if so, whether the District Court properly appointed Dorothy's sons as personal representatives.

¶10    Mary appealed the District Court's Order dated November 20, 2002, approving David's Petition to Approve Accounting and for Settlement and Distribution of a Testate Estate. However, the District Court granted David's Application for Formal Appointment of Personal Representative on September 27, 2001, and ordered that letters of administration be issued to him. Rule 1(b)(3), M.R.App.P., provides that an order granting letters of administration is an appealable order. Rule 5(a)(1), M.R.App.P., provides that an aggrieved

4

party has thirty days from the date of entry of an order to file a notice of appeal. By the time Mary appealed, David had been personal representative of Dorothy's estate for fourteen months. Mary did not timely appeal David's appointment as personal representative. *Matter of Estate of Pegg* (1984), 209 Mont. 71, 77, 680 P.2d 316, 319.

## ISSUE TWO

¶11     Whether the District Court properly treated expenses paid from Dorothy's estate for upkeep on the house bequeathed to Mary, and in which Mary has lived since Dorothy's death, as an advance against Mary's share of the residue of Dorothy's estate.

¶12     Section 72-3-101(2), MCA, provides that "[u]pon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will . . . ." Section 72-3-606, MCA, provides that a personal representative has the right to take possession or control of the decedent's property. This section, however, also allows the representative to leave real property with, or surrender it to, the person presumptively entitled to it. The Official Comments to § 72-3-606, MCA, state that the reason for this "proceeds from the assumption that it is desirable whenever possible to avoid disruption of possession of the decedent's assets by his devisees or heirs."

¶13     The question then arises whether the estate or the devisee is responsible for necessary expenses in connection with upkeep on the real property when the devisee remains in possession of the property during a will contest or other protracted proceeding. While this is seemingly a question of first impression in Montana, it has been resolved in other jurisdictions. The general rule is that "[u]nauthorized advancements and disbursements made in good faith by the representative for the benefit of legatees or distributees of the estate are

5

to be reimbursed from their respective portions of the estate." 34 C.J.S. *Executors and Administrators* § 542 (2003). New York case law is in agreement with this rule. In *In re Stutchbury's Will* (1954), 138 N.Y.S. 2d 653, the executor, who was also an heir and husband of decedent, lived in decedent's home after her death. The executor paid no rent into the estate and used estate funds to pay insurance premiums, repairs, taxes, mortgage payments, and mortgage interest on the house while he lived there. The decedent's children by a prior marriage objected to use of estate funds for these purposes. The court held that the mortgage payments were chargeable to the estate because they increased equity in the property, but that other expenses were not properly chargeable to the estate.

¶14 We agree with the general rule. Though Dorothy's house was part of her estate, at her death it immediately devolved to her specific devisee, Mary. Only if David had determined that it was necessary for him to take possession of the house for administration purposes would he, as personal representative, have been obligated to manage, improve, repair, insure, or pay taxes on the property pursuant to § 72-3-613, MCA. David, however, did not take possession of the house. Rather, Mary lived in it from the time of Dorothy's death. Thus, the payments made by David for upkeep on the house were solely for Mary's benefit and chargeable as an advance against Mary's share of the residue of Dorothy's estate.

**ISSUE THREE**

¶15 Whether the attorney's fees approved by the District Court were reasonable, necessary, and fairly allocated to Dorothy's estate.

¶16 Section 72-3-613(22), MCA, authorizes a personal representative to prosecute or

defend proceedings for the protection of the estate, and for the protection of himself in the performance of his duties. Section 72-3-613(21), MCA, authorizes a personal representative to employ persons, including attorneys, to advise or assist him in the performance of his duties. Section 72-3-632, MCA, authorizes a personal representative who does prosecute or defend a proceeding in good faith, to be paid his expenses for the suit, including reasonable attorney's fees. Section 72-3-633, MCA, sets forth the amount of fees a personal representative's attorney may be paid for services in connection with the estate. This section also allows for extraordinary fees to be paid to the attorney upon good cause shown.

¶17    In November 1999, Boyd Jr. petitioned in Montana to be personal representative of Dorothy's estate, and sought appointment of a special administrator to represent the estate in a declaratory judgement action in South Dakota. Mary objected to Boyd Jr.'s appointment alleging that Boyd Jr. and David were guilty of fraud, conversion, misappropriation of funds, undue influence, etc. Mary made the same allegations in the declaratory judgment action in South Dakota. The suits progressed simultaneously and no one was absolutely sure which suit would be resolved first. David and Boyd Jr. were required to prepare defenses in both Montana and South Dakota, and much of the work done by Boyd Jr.'s and David's attorneys was pertinent to both suits. On June 15, 2001, the First Judicial Circuit Court of South Dakota entered Findings of Fact and Conclusions of Law in the declaratory judgment action which absolved Boyd Jr. and David of the allegations of misconduct advanced by Mary. On July 20, 2001, the Montana Thirteenth Judicial District Court, taking judicial notice of the Findings entered by the court in South Dakota, entered an order denying Mary's objections to Boyd Jr.'s and David's appointment as personal representative. The District Court found that David and Boyd Jr. acted in good faith in defending against Mary's objection and

7

upholding the instructions in Dorothy's Will.

¶18   Mary now argues that the fees charged by Boyd Jr.'s and David's attorneys for preparing defenses to Mary's objections are not properly chargeable to Dorothy's estate because most of the objections were resolved by the court in South Dakota, and that suit was not instigated for the benefit of Dorothy's estate. David acknowledges that the South Dakota suit was resolved prior to the Montana suit, but argues that the work done by his Montana attorneys was done in Montana, for the purpose of defending Mary's challenge to his appointment as representative in Montana. The District Court found that the attorneys who represented David and Boyd Jr. kept separate billing records for prosecution of 1) the Montana appointment litigation, 2) the South Dakota declaratory judgment action, 3) the probate of Boyd Sr.'s Will, and 4) Dorothy's guardianship proceedings, thereby assuring that only the costs of defending the appointment would be charged to Dorothy's estate. The District Court did not abuse its discretion and thus the award of $23,164.01 for attorneys fees in defending the appointment is affirmed.

¶19   Similarly, the District Court found that an award of $20,370.12 in statutory and extraordinary fees, including $1750 for expert testimony regarding the reasonableness of the fees, plus $692.78 in costs, was appropriately allocated to Dorothy's estate. Testimony revealed complications with termination of the conservatorship, defense of a $250,000 claim by Mary for services rendered to Dorothy which would have consumed the estate, motions concerning preliminary distributions from the estate, and problems obtaining information from Mary on particular estate assets. We conclude that the District Court did not abuse its discretion in finding the fees reasonable.

¶20   We will not overturn an award of attorneys fees paid by a personal representative

8

absent an abuse of discretion, and the court's findings will be upheld unless clearly erroneous. *In re Estate of Stone* (1989), 236 Mont. 1, 768 P.2d 334. A reasonable legal fee should be determined by considering time spent, the nature of the services rendered, and the skill and experience required. A crucial factor reviewed is whether the services rendered were beneficial to the estate. *Stone*, 236 Mont. at 4, 768 P.2d at 336. We hold the District Court appropriately considered these factors in making its determination, and its decision is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER